UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRASNEY DUMKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 02711 |
| | ) | |
| JEH CHARLES JOHNSON, Secretary, | ) | Judge Edmond E. Chang |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY(FEDERAL EMERGENCY | ) | |
| MANAGEMENT AGENCY) | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frasney Dumka sued her former employer, alleging that the Federal Emergency Management Agency failed to reasonably accommodate her and discriminated against her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and retaliated against her in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*[1] The government now moves to dismiss Dumka's retaliation claim on the ground that Dumka failed to exhaust this claim at the administrative-agency level. For the reasons discussed below, the Court denies the government's motion to dismiss.

**I. Background**

For purposes of this motion, the Court accepts as true the allegations in Dumka's amended complaint. Frasney Dumka suffers from Traumatic Brain Injury

---

[1]The Court has federal-question jurisdiction over Dumka's claims under 28 U.S.C. § 1331. Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

and Attention Deficit Hyperactivity Disorder, both of which substantially limit her ability to think, learn, work, and communicate. R. 25, Am. Compl. ¶¶ 3-4. Dumka alleges that in early 2010, she applied for a position with FEMA when it was hiring temporary personnel for disaster operations and emergency-related services. *Id.* ¶ 12. On January 15, 2010, Kent Huizinga, FEMA's Recovery Division Cadre Manager, contacted Dumka about a Disaster Assistance Employee position. *Id.* ¶¶ 13-14. During this discussion, Huizinga asked for Dumka's resume, which revealed that she had cognitive disabilities. *Id.* ¶¶ 14-16. On April 11, 2010, FEMA hired Dumka as an Individual Assistance Reports Specialist (which is a type of Disaster Assistance Employee) at its Chicago, Illinois branch. *Id.* ¶ 19. Before beginning her job training, Dumka spoke with FEMA's Disability Outreach Department to request additional support to perform her job responsibilities. *Id.* ¶ 20. An investigator for the Disability Outreach Department instructed Dumka to notify her supervisors of her disabilities and to request any necessary accommodations. *Id.* ¶¶ 21-22.

Dumka began a training deployment on August 30, 2010 in Milwaukee, Wisconsin. *Id.* ¶ 23. At the start of this training, she allegedly told her immediate supervisor, Cassie Ringsdorf, about her disabilities and requested accommodations, such as additional help with completing her timesheets. *Id.* ¶ 29. Dumka also requested permission to ask Ringsdorf questions when Dumka did not understand her tasks. *Id.* ¶ 29. Despite making multiple oral requests for these accommodations, Dumka alleges that Ringsdorf ignored her. *Id.* ¶¶ 30-31.

Around September 2, 2010, at the end of her training deployment, Dumka allegedly continued to seek help with completing her timesheets, this time by contacting Huizinga (the division manager). *Id.* ¶¶ 34-35. Dumka claims that Huizinga also denied her requests for help; the only "assistance" he provided was telling her to verify her timesheets for accuracy before submission. *Id.* ¶¶ 35-36. A few days later, around September 16, Dumka also complained to Huizinga that Ringsdorf had discriminated against Dumka during the training deployment by refusing to help Dumka complete her daily timesheets and tasks. *Id.* ¶¶ 68-70. Huizinga still failed to provide any assistance after this conversation. *Id.* ¶ 36. So without any assistance or training from Ringsdorf or Huizinga, Dumka submitted her first timesheets on September 19, 2010. *Id.* ¶ 37. On October 4, 2010, FEMA fired Dumka for falsifying her timesheets and for engaging in inappropriate conduct. *Id.* ¶ 38. Dumka alleges that she received no warning before her firing. *Id.*

Within forty-five days of her termination, Dumka contacted her Equal Employment Opportunity (EEO)[2] counselor at the Department of Homeland Security (DHS) to report her supervisors' conduct, which she believed was illegal. *Id.* ¶ 39. The EEO counselor, who was unable to resolve Dumka's claims, issued her a notice of the right to file a discrimination complaint. *Id.* ¶¶ 40-41. Within fifteen days, Dumka filed a formal complaint against FEMA at the EEO Office without legal representation. *Id.* ¶ 42; R. 25 at 14, Exh. A, EEO Complaint. On March 29,

---

[2]The Equal Employment Opportunity (EEO) Office is a division within the Department of Homeland Security's Office for Civil Rights and Civil Liberties. *See* http://www.dhs.gov/office-civil-rights-and-civil-liberties. The EEO Office is not the same as the Equal Employment Opportunity Commission (EEOC), which is a separate agency from Homeland Security.

2013, an Administrative Law Judge at the EEOC issued a summary judgment decision dismissing Dumka's complaint, Am. Compl. ¶ 45, and on May 1, 2013, DHS's EEO Office issued a final order implementing this decision, *id.* ¶ 46. Dumka then appealed, but the appeals decision affirmed the final order. *Id.* ¶¶ 44-78. Dumka also filed a motion to reconsider the appeals decision but was again unsuccessful. *Id.* ¶¶ 49, 52. The appeals decision provided a right-to-sue letter, so Dumka filed a three-count complaint in federal court on April 15, 2014. *Id.* ¶¶ 50-51. In her federal complaint, Dumka alleges that FEMA violated her rights by (1) failing to reasonably accommodate her disabilities; (2) discriminating against her on account of her disabilities; and (3) terminating her employment as a result of her request for accommodations. *Id.* ¶¶ 59, 63, 70. The government now moves to dismiss the third claim, which is a retaliation claim, arguing that Dumka failed to exhaust by not raising it in the administrative proceedings. R. 28, Mot. to Dismiss ¶ 2.

**II. Legal Standard**

The government moves to dismiss the retaliation claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot. to Dismiss at 1. Rule 12(b)(1) is for jurisdictional problems, but a failure to exhaust administrative remedies is not a jurisdictional defect. *See, e.g., Gibson v. West*, 201 F.3d 990, 993 (7th Cir. 2000) ("a failure to exhaust administrative remedies is not a jurisdictional flaw"); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (exhaustion "is not jurisdictional … [but] it is a condition precedent with which Title VII plaintiffs must

4

comply.") Instead, it is simply a precondition to bringing a claim in federal court (which is different from not having adjudicative authority over a claim), so the Court evaluates this motion solely under Rule 12(b)(6) for failure to state a claim. *See Cheek*, 31 F.3d at 500.

A complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation and quotations omitted). This rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiff out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

In addition, "[a] motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a Defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And

5

the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

More specifically to the issue presented by the government's motion in this case, exhaustion of administrative remedies is an affirmative defense that is generally not resolved on a motion to dismiss because a plaintiff "ha[s] no obligation to allege facts negating an affirmative defense in her complaint." *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006) (citations omitted). But there is an exception: a court may address an affirmative defense when the defense is "so plain from the face of the complaint … ." *Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002). *See also Mosely*, 434 F.3d at 533 (although a "shortcut," parties may "present certain arguments through a motion to dismiss … under Rule 12(b)(6), if the allegations of the complaint in the light most favorable to the plaintiff show that there is no way that any amendment could salvage the claim."). In this case, neither party disputes the Court's ability to resolve the exhaustion issue in this motion to dismiss. Dumka pled that "[she] has satisfied all administrative prerequisites prior to the filing of this action." Am. Compl. ¶ 53. She has also attached relevant agency-level documents to her amended complaint, including her original administrative complaint and subsequent decisions. *Id.* Thus, the Court may address the exhaustion issue because "the allegations of [Dumka's] complaint itself set forth everything necessary to satisfy the affirmative defense." *Angiulo v. United States*, 867 F. Supp. 2d 990, 997 (N.D. Ill. 2012) (citing *United States v. Lewis*, 411 F.3d 838, 841 (7th Cir. 2005)).

## III. Analysis

### 1. Exhaustion Requirement

Dumka filed her retaliation claim under the Rehabilitation Act, which prohibits disability discrimination by federal agencies and programs that receive federal funding. 29 U.S.C. § 794(a). The Rehabilitation Act incorporates the remedial provisions of Title VII of the Civil Rights Act of 1964: all "remedies, procedures, and rights" in Title VII "shall be available" to any party suing under the Rehabilitation Act. 29 U.S.C. § 794a(a)(1). Like Title VII, "[Rehabilitation Act] remedies include any remedies available within the agency that the complainant must pursue … and he not only may but must exhaust those remedies before he can bring suit." *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1320 (7th Cir. 1984); *see also Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) ("Individuals who have suffered discrimination can seek relief [under the Rehabilitation Act] pursuant to the procedures and requirements outlined in Title VII of the Civil Rights Act, which include exhausting administrative remedies prior to bringing suit."). Because the remedies and exhaustion analyses for Title VII and the Rehabilitation Act are the same, the Court may analogize to Title VII cases. *Id*.

To understand the standard for measuring exhaustion, it is useful to understand the purposes of the defense. Exhaustion serves two purposes: "to promote resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them." *Teal*, 559 F.3d at 691 (citing *Cheek*, 31 F.3d at 500). This means that plaintiffs may only bring

claims that were included in their charge to the EEOC (or to the internal equal employment office within the federal agency employer, as was the case here). *See Cheek*, 31 F.3d at 500; *McGuinness*, 744 F.2d at 1320. The Seventh Circuit has held, however, that "exact correspondence between the words of an EEOC charge and the judicial complaint" is not required. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 865-66 (7th Cir. 1985). Because an administrative complaint contains factual statements that may implicate various types of discriminatory actions, specific words "need not presage with literary exactitude." *Id.* (citation and quotations omitted). Ultimately, the test is whether "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an [administrative] investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500. And to be reasonably related, there must be "a factual relationship between [the claims]. This means that the [administrative] charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Id.* at 501.

Importantly, the Supreme Court emphasized that "technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiated the process." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (quoting *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)). Because "most [administrative] charges are completed by laypersons rather than by lawyers, a [] plaintiff need not allege in an [administrative] charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek*, 31

F.3d at 500 (citation omitted). Instead, courts must liberally construe the administrative proceedings when evaluating whether the claims are reasonably related to the charges in the plaintiff's complaint. *Id.*

### 2. Dumka's Retaliation Claim

At issue in this case is whether the retaliation claim in Dumka's amended complaint is beyond the scope of her EEO charge. In her amended complaint, Dumka alleges that she was fired as a result of (1) her repeated requests for accommodations to both Huizinga and Ringsdorf; and (2) her subsequent complaint to Huizinga about being refused assistance. Am. Compl. ¶¶ 68-71. The government argues that this retaliation claim was never raised at the agency level. Mot. to Dismiss ¶ 2.

As an initial matter, the government notes in its reply that Dumka did not check the box for "retaliation" in her administrative complaint, R. 34, Def.'s Reply Br. at 2, but checking that box is not an absolute precondition to exhausting a retaliation claim. It is true that question 16 of the administrative complaint asks "the bases [the employee] believe[s] were relied on to take the actions" alleged to be discriminatory, and Dumka did not check the box for "retaliation/reprisal." EEO Complaint at 000003. But simple technicalities such as "[w]hat boxes, for instance, are checked on the EEOC form do not necessarily control the scope of a subsequent complaint." *Kristufek v. Hussman Foodservice*, 985 F.2d 364, 368 (7th Cir. 1993); *see also Griffin v. Sutton Ford, Inc.*, 452 F. Supp. 2d 842, 846 (N.D. Ill. 2006) (despite failing to check the retaliation box on the EEOC charge, the plaintiff could maintain

9

a retaliation claim). So Dumka's failure to check the retaliation box is not dispositive.

Dumka argues that three documents show that her retaliation claim was previously raised at the agency level: (1) her August 18, 2011 affidavit submitted to the EEO Office/Office of Equal Rights,³ R. 32-1, Exh. A at 58, 8/18/11 Affidavit; (2) a February 11, 2011 letter from the Office of Equal Rights, R. 32-1, Exh. A at 48, 2/11/11 Letter; and (3) a December 24, 2010 letter she wrote to the Office of Equal Rights responding to questions on the EEO charge form, R. 32-1, Exh. A at 45, 12/24/10 Letter. R. 32, Pl.'s Resp. ¶¶ 1, 3-4. The Court will address each of these documents below, as well as a March 18, 2011 fax that Dumka sent the Office of Equal Rights. R. 32-1, Exh. A at 31, 3/18/11 Fax. All of these documents were part of DHS's formal investigation of Dumka's administrative complaint. R. 32-1, Exh. A, Investigation Report.

### A. Affidavit

Dumka's August 18, 2011 affidavit to the Office of Equal Rights provides the strongest support for her position that she raised her retaliation claim during the administrative process. In this affidavit, Dumka elaborated on her termination and explained, albeit briefly, that she believed she was terminated because of her repeated requests for reasonable accommodations:

> I was not provided the accommodations I requested. In fact, my supervisors treated my accommodation requests with apathy and neglect. In some instances their actions exacerbated my problems and were counterproductive … . *Ultimately, management officials used*

---

³The Office of Equal Rights is an office within FEMA. *See* https://www.fema.gov/office-equal-rights.

> *their failure to provide reasonable accommodations for my disability as the reasons for terminating my employment.*

8/18/11 Affidavit at 000045 (emphasis added). And the statement that her supervisors treated her with "apathy and neglect" that "exacerbated [her] problems" suggested that her continued requests led to increasing tensions with Huizinga and Ringsdorf. *Id.* Later in the affidavit, Dumka also wrote that "I believe I was discriminated against because both of my supervisors were aware of my handicap yet they deliberately denied my request for reasonable accommodation. *If [sic] fact the situation seem to exacerbate more after I identified my disability to the point I felt humiliation.*" *Id.* at 000048 (emphasis added). These statements establish the first element of the exhaustion test: a "reasonable relationship between the allegations in the [administrative] charge and the claims in the complaint." *Cheek*, 31 F.3d at 500. A retaliation claim under the Rehabilitation Act requires "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Anderson v. Donahoe*, 699 F.3d 989, 995 (7th Cir. 2012) (citations and quotations omitted). In her amended complaint, Dumka alleges that "[a]s a result of Plaintiff's requests for reasonable accommodations for her disabilities to her supervisors, Defendant retaliated against Plaintiff by terminating her employment." Am. Compl. ¶ 70. And in the affidavit, Dumka previously identified all three elements of this retaliation claim. First, she described a protected activity—telling her supervisors about her disability and requesting reasonable accommodations multiple times. Next, she identified a materially adverse action—termination of her employment. And lastly, she

identified the nexus between the two actions when she explained that the more she asked for accommodations, the more contentious her relationship became with Huizinga and Ringsdorf, and that these increased tensions laid the foundation for her dismissal. Thus, her affidavit and the amended complaint describe the same conduct—repeatedly asking for additional support and being terminated as a result. They also implicate the same individuals—Huizinga and Ringsdorf.

The connections between the accommodation requests and the firing also satisfy the second element of the exhaustion standard that "the claim in the complaint can reasonably be expected to grow out of an [administrative] investigation of the allegations in the charge."[4] *Cheek*, 31 F.3d at 500. Dumka's retaliation claim was "so related and intertwined in time, people, and substance" to her discrimination and reasonable accommodation claims, all of which centered on repeated denials of her accommodation requests, that the agency could have uncovered the retaliation claim in its investigation. *Kristufek*, 985 F.2d at 368. Dumka's retaliation claim "d[id] not involve different parties as those already identified in the [discrimination] charge, nor d[id] it require additional investigation of the existing parties, as the [agency] was already aware of the incident as described in the charge." *Griffin*, 452 F. Supp. 2d at 847. And although Dumka did not explicitly label the incidents in the affidavit as retaliatory, courts have

---

[4]Although DHS and EEOC did not investigate or consider Dumka's retaliation claim, there is no explicit agency determination that Dumka's administrative complaint did not contain a retaliation claim. In any event, a federal court is not bound by administrative-agency EEO decisions on the merits, *see, e.g.*, *Chandler v. Roudebush*, 425 U.S. 840 (1976) (federal employees whose Title VII claims were rejected by their employing agency after a full administrative hearing are entitled to *de novo* trial in federal court on these claims), so it is unlikely that a procedural decision would bind a federal court.

12

repeatedly emphasized that administrative proceedings must be construed liberally when a plaintiff does not receive legal or professional assistance during the process. *See Teal*, 559 F.3d at 691; *Cheek*, 31 F.3d at 499. When a *pro se* plaintiff like Dumka has a cognitive disability, this generous lens is especially necessary to further the goals of antidiscrimination statutes. *Id.*

### B. Fax

Although Dumka does not expressly point to this document in her brief, a fax that Dumka sent to the Office of Equal Rights also supports the claims in her affidavit and shows that she raised a retaliation claim based on another protected activity—namely, complaining to Huizinga. In addition to alleging that she was fired for making frequent requests for accommodations, Dumka also alleges in her amended complaint that she was fired for complaining to Huizinga about Ringsdorf. Am. Compl. ¶¶ 67-71. This conversation with Huizinga allegedly took place on September 16, 2010, shortly after Dumka's training ended. *Id.* During the administrative investigation, Dumka alluded to this conversation in a fax to the Office of Equal Rights:

> It wasn't until a week and a half after I had returned home did Mr. Huizinga speak with me about my time card, and he kept stating it was wrong, yet refused to give any guidance on how to correct this, even though I stated I would come to Chicago to make sure it was right … . I also told him that I was refused assistance by Ms. Ringsdorf, and that I had to listen to negative gossip the whole time I was [in training]. That is when he replied by stating, "Yes, I know they love to gossip." (I was totally surprised of this answer. Does that mean that he condones it?

13

3/18/11 Fax at 000021-22. Dumka explained that after she complained about Ringsdorf's behavior, Huizinga made a dismissive remark suggesting that he condoned Ringsdorf's behavior. *Id.* Complaining about being denied accommodations is statutorily protected activity, and expansively construed, Dumka did allege that she was ultimately fired as a result. *Id.* at 000026 (explaining that her termination was "premeditated"). Like the affidavit, the allegations in the fax are reasonably related to the retaliation allegations in her amended complaint. Both sets of allegations involve the same individuals, Dumka and Huizinga, as well as the same conduct—complaining to Huizinga about Ringsdorf, and Huizinga responding negatively. And again, the agency reasonably would be expected to investigate the retaliation claim. Given that the standard for determining the scope of the administrative charge is expansive and that plaintiffs must "simply state[] in laymen's language that unfair thing that happened," the facts underlying Dumka's retaliation claim concerning her complaints to Huizinga were also raised at the agency level in the fax. *Jenkins*, 538 F.2d at 168 (quotations omitted).

The government relies on a number of cases, including *O'Rourke v. Continental Cas. Co.*, 983 F.2d 94 (7th Cir. 1993), in which an agency-level discrimination claim did not imply retaliation. Def.'s Reply at 3. But the cases citing the principle that retaliation is not reasonably related to discrimination are confined to their specific facts and cannot be taken so far as to say that no retaliation claim *ever* reasonably relates to any discriminatory actions. *See, e.g.*,

14

*Kristufek,* F.2d at 368 ("Many of these cases are narrowly based on their facts and not easy to reconcile."). In *O'Rourke*, for example, the plaintiff's administrative complaint did not mention an unlawful termination or otherwise hint at retaliation. *O'Rourke*, 983 F.2d at 97. But unlike *O'Rourke*, retaliation can be inferred in this case from Dumka's affidavit and fax, which outline her repeated requests for accommodations, her complaint to her supervisor for being ignored, and a resulting termination.

### C. 2010 and 2011 Letters

For the sake of completeness, the Court will discuss two other items on which Dumka relies. Dumka points to two letters from February 11, 2011 and December 24, 2010, but these documents do not really assert a retaliation claim. Def.'s Reply at 2-3. As for the February 11 letter, Dumka argues that the Office of Equal Rights recognized a retaliation claim when it wrote: "On October 6, 2010, you received a termination letter for falsification of your time sheet that you allege to be untrue. You believe you weren't given the correct assistance as a trainee for entering your time and attendance." 2/11/11 Letter at 000034; Pl.'s Resp. ¶ 4. But this letter only mentions discrimination and does not hint at retaliation; it discusses Dumka's belief that she was not given appropriate assistance with her timesheets and that Rigsdorf "avoided [her] … did not train [her]." 2/11/11 Letter at 000034. The letter does not suggest, however, as Dumka does in her amended complaint, that she was fired in retaliation for requesting support.

Similarly, the December 24 letter to the Office of Equal Rights also does not raise an inference of retaliation. Pl.'s Resp. ¶ 4. In this letter, Dumka explained that her discrimination claim stemmed from her supervisor's refusal to assist her with training, and that she felt ignored and mistreated. *Id.* Because she received no help with filling out her timesheets, she was fired when she incorrectly completed them: "I was terminated for something I never received training for … ." 12/24/10 Letter at 000032. This comment also focuses on her discrimination claim and lacks specificity as to any retaliation claim. Dumka suggests that she was treated unfairly by being denied assistance, not that she was fired for requesting accommodations. In sum, both of the letters discuss disparate treatment but do not detail Dumka's termination or suggest that her incorrect timesheets were actually pretextual reasons for her termination. But as explained previously, the more specific affidavit and fax do the necessary work in supporting Dumka's proposition that she adequately exhausted her retaliation claim.

## IV. Conclusion

For the reasons discussed above, Defendant's motion to dismiss [R. 28] Count 3 of Dumka's amended complaint—the retaliation claim—is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 19, 2015